## Commonwealth v. Bonnor (No. 2)

*William H. Platt,* district attorney, for the Commonwealth.

*Richard J. Makoul,* for defendant.

GARDNER, *J.,* August 31, 1984—This matter is before the court on the petition of the Commonwealth of Pennsylvania[1] for an order directing de-

---

1. The County of Lehigh through the county solicitor joined in the prayer of the Commonwealth petition and appointed the district attorney as a special assistant county solicitor for the purposes of pursuing this claim on behalf of the county.

fendant to reimburse the County of Lehigh for the cost of his public defender and other case costs. For the reasons expressed in this opinion, we grant the Commonwealth's petition and make absolute the rule previously issued.

On March 7, 1983, defendant pled guilty to murder of the third degree and aggravated assault as the result of a stabbing incident where he killed a woman and wounded her daughter in their home. Defendant was sentenced on May 20, 1983 by our colleague, Honorable John E. Backenstoe, to a term of imprisonment of 13 to 30 years.

Defendant was represented by a court-appointed attorney, Richard J. Makoul, Esq. Mr. Makoul was appointed by the undersigned on September 10, 1982, after hearing. A brief history of this appointment is pertinent to this opinion: Previously, on August 26, 1982 defendant filed a written request for public defender. Ordinarily the Chief Public Defender of Lehigh County would review and act upon such requests. In this case, however, because the victims were the mother and sister of an assistant public defender, the Chief Public Defender felt it would be inappropriate for him to review defendant's application to determine indigency or to assign an attorney. Accordingly, he presented a motion for court to review and adjudge indigency.

A hearing was held on this motion on September 3, 1982 at which time defendant testified and offered exhibits.[2] Although the district attorney participated in the hearing, he took no position on the public defender's motion.

At the time of the hearing to adjudge indigency, defendant was incarcerated in Lehigh County Pris-

2. Defendant was represented at that hearing by Robert E. Donatelli, Esq. who was court-appointed on August 31, 1982.

on in pretrial confinement. He had not resigned his job as a teacher in the Allentown School Disrict. At that time $4,977.91 was credited to defendant's Public School Employes' Retirement Account. These funds, along with other modest assets were considered in determining defendant's indigency. On September 10, 1982, we entered an order finding defendant without sufficient funds to hire an attorney, and we appointed Mr. Makoul to represent him. In our opinion accompanying the order we stated that we were "not prepared to hold that defendant must resign from his job in order to acquire his pension funds to use to pay an attorney. Such a requirement would impose a substantial hardship upon defendant, by requiring defendant to give up both his livelihood and pension. In any event, such an order would be of doubtful legality."

After pleading guilty on March 7, 1983, defendant resigned from his teaching position on March 24, 1983, whereupon defendant became entitled to receive $5,521.34 from his teacher's pension, representing his contributions and accumulated interest.[3] Defendant has requested these funds from the school district.

However, on April 7, 1983 the district attorney obtained a rule upon defendant to show cause why he should not pay over and apply his Public School Employees' Retirement Fund refund to the County of Lehigh to reimburse the county for costs expended for his defense.[4] The county had paid $4,908.43

3. A letter dated March 13, 1984 from Marsha V. Mills, Assistant Counsel for the Commonwealth of Pennsylvania, Public Employes' Retirement System states that defendant's retirement account contained $5,521.34, consisting of $4,741.88 in contributions and $779.46 in interest.

4. The rule included a provision requiring defendant "upon payment to him (or anyone on his behalf)" to deposit

for these costs, including $4,201.20 counsel fees[5] and $707.23 prosecution costs. On March 12, 1984 a hearing was held on the Commonwealth's petition.[6]

Defendant contends that his constitutional rights to due process of law and equal protection of the laws will be violated if the court orders reimbursement of county expenses from his retirement fund. Additionally, defendant contends there is no authority in the law, whether by statute, precedent, or court rule, entitling the county to recover money paid for counsel fees incurred while defendant was indigent. Defendant has cited no statute or decisional law in support of his position. However, we are persuaded that the United States Constitution, and decisions of the United States Supreme Court and the Supreme Court of Pennsylvania allow for reimbursement of county expenses in this matter.

Retirement funds are specifically exempt from court attachment, or execution on a judgment. 42 Pa.C.S. §8124(b). "Except as provided . . . , the right of a person to a member's annuity, a State annuity, or retirement allowance, to the return of contributions, . . . are hereby exempt from any State or

these funds with the Clerk of Courts, Criminal Division, pending disposition of this matter by the court. To date the Commonwealth Retirement System has not paid the funds to defendant or to the Clerk of Court.

5. On November 18, 1982 Robert E. Donatelli, Esq., was paid counsel fees of $427 for representing defendant in connection with the indigency hearing. On June 6, 1983 Richard J. Makoul, Esq. was paid $3,774.20 for services rendered thereafter through sentencing. Defendant has conceded that these fees are reasonable.

6. Mr. Makoul continued to represent defendant at this hearing.

municipal tax, and exempt from levy and sale, garnishment, attachment, or any other process whatsoever, and shall be unassignable." 24 Pa.C.S. §8533(a).

This language clearly prohibits attachment of annuity or retirement funds. However, once a person has received payment of such funds, or has obtained the right to receive such funds because of retirement or resignation, the funds lose their identity as pension funds. At that point those funds become personal property of the recipient, and like any other liquid assets that have not been exempted specifically by statute from seizure, levy or sale upon execution, are subject to attachment to satisfy his legal obligations. See Gulf Mortgage and Realty Investments v. Alten, 282 Pa. Super. 230, 422 A.2d 1090 (1980). Therefore, the court is not restricted by statute from attaching defendant's money once it has been released from the retirement fund.

Defendant argues that Judge Backenstoe's "ex parte" order of April 7, 1983 violates his due process rights. That order, provided that:

". . . defendant shall not assign or dispose of the refund to be received from said Public School Employes Retirement System, but rather shall upon payment to him (or anyone on his behalf) cause same to be deposited with the Clerk of this Court, until further Order of this Court disposing of the Rule herein entered."

Nothing in this language indicates a "seizure" of defendant's property. The funds were merely "frozen" pending further ruling by this court. Such an order may be reviewed as preliminary injunctive relief designed to maintain status quo. See Schlesinger v. Carlson, 489 F. Supp. 612 (E.D., Pa. 1980). In addition, because defense counsel was present

when the petition was presented, it cannot be considered ex parte.

In Fuller v. Oregon, 417 U.S. 40, 94 S. Ct. 2116, 40 L.Ed.2d 642 (1974), the United States Supreme Court reviewed Oregon's statutory scheme for recoupment of counsel fees by that state from a convicted defendant who was indigent at the time of the criminal proceedings, but subsequently acquired the means to pay the cost of his defense. The court upheld the constitutionality of the statute and found no violation of the equal protection clause of the Fourteenth Amendment. The court found a rational basis for the classification distinguishing between convicted defendants who are required to reimburse the state, and unconvicted defendant's who are not required to reimburse. The court stated that ". . . Oregon could surely decide with objective rationality that when a defendant has been forced to submit to a criminal prosecution that does not end in conviction, he will be freed of any potential liability to reimburse the State for the costs of his defense." Fuller, 417 U.S. at 50, 94 S. Ct. at 2123, 40 L.Ed.2d at 652.

More recently, the Supreme Court of Pennsylvania held that the orphans' court, exercising its equitable jurisdiction, properly directed reimbursement of defense costs from an inheritance which defendant received after his murder trial.[7] In Re: Estate of Damario, 488 Pa. 434, 412 A.2d 842 (1980).

Damario was indicted for the murder of his parents. Finding him indigent, the court appointed counsel at county expense. Damario was tried and

---

7. All divisions of the court of common pleas may exercise concurrent jurisdiction with the orphans' court division in cases of this nature under certain circumstances. See 20 Pa.C.S. §712(3).

found not guilty by reason of insanity, thereby entitling him to inherit from his parent's estate. Thereafter, Damario was adjudicated incompetent. The county then petitioned for reimbursement of funds expended by the county for his defense. The Orphans' Court directed reimbursement from the incompetent's estate of defendant.

In affirming the orphan's court, the Pennsylvania Supreme Court cited with approval the language in Fuller v. Oregon, 417 U.S. 40, 54, 94 S. Ct. 2116, 2124-25, 40 L.Ed.2d 642, 655 (1974) which stated, "We cannot say that the Constitution requires that those only slightly poorer must remain immune from any obligation to shoulder the expenses of their legal defense, even when they are able to pay without hardship". Damario, 488 Pa. at 438, 412 A.2d at 844 (1980). The court further emphasized the fairness of mandating repayment of funds expended for defendant's benefit. Moreover, by analogy, the common law implies a duty on the part of a recipient of public assistance to make reimbursement if able to do so. Waits Estate, 336 Pa. 151, 7 A.2d 329 (1939).

There are cases which have invalidated orders for reimbursement of counsel fees. Commonwealth v. Terry, 470 Pa. 234, 368 A.2d 279 (1977); Commonwealth v. Opara, 240 Pa. Super. 511, 362 A.2d 305 (1976). These cases are inapplicable to the case at bar for several reasons. First, the decisions in Terry and Opara were based, in part, upon the fact that "the trial court cited no authority for its action."[8] These cases were decided before Damario, supra.

---

8. Terry, 470 Pa. at 236, 368 A.2d at 280. "There being no authority for the order of the lower court, the order must be vacated . . . ." Opara, 240 Pa. Super. at 517, 362 A.2d at 308.

The trial court in the instant case is citing, and relying upon, the authority of the Supreme Court of Pennsylvania in Damario and the United States Supreme Court in Fuller, supra. Second, those cases are interpreting a statute which is, by its terms, applicable only in counties of the first class.[9] Lehigh County is a county of the third class and is governed by a different statute, the Public Defender Act.[10] Third, the act interpreted in Terry and Opara does authorize reimbursement. It provides that defendant "shall, to the extent of his . . . financial ability, reimburse the county for compensation and expenses incurred and paid to court-assigned counsel at such rate as the court shall order or direct."[11] However, in Terry and Opara the court was relying upon an exception in the statute which is inapplicable here. That clause specifically prohibited reimbursement for counsel fees when defendant's free legal counsel was supplied by a local non-profit organization.[12] In those cases counsel was supplied by such an organization, the Philadelphia Public Defenders Association. In our case, the free legal services were provided by an individual appointed by the court, not by a non-profit organization.

Defendant further contends that allowing reimbursement from his after-acquired property is improper because there is no time limitation on the

9. Act of January 19, 1968, P.L. (1967) 984, §§1-12, 16 P.S. §§8901-8912, and specifically §8904.

10. Act of December 2, 1968, P.L. 1144, No. 358, §§1-13, 16 P.S. §§9960.1-9960.13.

11. Act of July 22, 1970, P.L. 535, No. 180, §3, 16 P.S. §8903.

12. Act of January 19, 1968, P.L. (1967) 984, §2; 16 P.S. §8902; transferred from 19 P.S. §792 in 1981. See Terry, 470 Pa. at 236, 368 A.2d at 280; Opara, 240 Pa. Super. at 517, 362 A.2d at 307.

county in pursuing such reimbursement. We do not find this improper where certain procedural safeguards are observed. Mr. S., 169 N.J. Super. 209, 404 A.2d 653 (1979). Such safeguards include: (1) collecting reimbursement only from individuals who can repay without "manifest hardship"; (2) providing defendant an opportunity to contest the value of the services for which reimbursement is being sought; and (3) providing defendant with the same protective exemptions available to other civil judgment debtors.

Those safeguards are all present here. Defendant has voluntarily resigned from his prior position. The retirement funds available to him are in excess of the amount owed to the County of Lehigh. Therefore, we find no "manifest hardship" imposed upon defendant. Defendant agrees that the fee received by his court-appointed counsel from the county legal services was fair and reasonable.[13] Also, no protective exemptions are being denied defendant which are available to other civil judgment debtors.

The Supreme Court of Pennsylvania has similarly addressed the issue of safeguards in directing reimbursement from after-acquired property:

"The court properly exercised its discretion in granting the county's petition for reimbursement, where the petition was filed within a reasonable period after the services were supplied. So too the court's reimbursement order was proper in that it directed payment of a sum certain, in full satisfaction of the county's claim. . . . It is agreed that the county sought an amount correctly and reasonably reflecting the costs of defense services provided.

13. Paragraph 1(b) of defendant's answer to Commonwealth's petition.

There is no claim that the amount directed to be paid to the county will impose hardship or unduly burden the estate." Damario, 488 Pa. at 439-440, 412 A.2d at 845 (1980).

Here the Commonwealth sought reimbursement promptly after learning of defendant's resignation and access to the funds. The amount due the county is certain and reasonable. Considering all factors, as discussed in Damario, we find that reimbursement to the county for defense costs is appropriate in this case.

Defendant's contention that reimbursement violates his constitutional right to counsel must also be dismissed. Defendant argues that a person accused of crime might decline appointed counsel if he knows he may be required to reimburse, thus "chilling" his constitutional right to counsel. This argument has been rejected by the United State Supreme Court in Fuller, 417 U.S. at 53-55, 94 S.Ct. at 2124-2125, 40 L.Ed.2d at 653-655. See Damario, 488 Pa. at 400 n.5, 412 A.2d at 845 n.5.

For all the foregoing reasons, we grant the petition of the Commonwealth, and make absolute the Rule of April 7, 1983. Accordingly, we direct the Public School Employes' Retirement Fund to pay over to the County of Lehigh the sum of $4,908.43 from the funds due defendant to reimburse the county for defendant's counsel fees and case costs.

## ORDER

Now, this August 31, 1984, upon consideration of the petition of the Commonwealth of Pennsylvania and rule to show cause why defendant should not pay over and apply his Public School Employes' Retirement Fund refund to the County of Lehigh to reimburse the county for legal fees and costs expend-

ed for his defense, after hearing, upon consideration of the memoranda of the parties, and for the reasons expressed in the accompanying opinion,

It is ordered that the petition of the Commonwealth is granted.

It is further ordered that the rule issued April 7, 1983 is made absolute.

It is further ordered that the Public School Employes' Retirement Fund of the Commonwealth of Pennsylvania shall pay to the Clerk of Courts of Lehigh County-Criminal Division, for the use of the County of Lehigh, from moneys held by it to the credit of defendant, the sum of $4,908.43 to reimburse the county for counsel fees in the sum of $4,201.20 and costs in the sum of $707.23 incurred in the within matter.