672 A.2d 1353

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Ronald D. JONES, Appellant.**

Superior Court of Pennsylvania.

Submitted December 18, 1995.

Filed March 15, 1996.

60

Jeffery M. Cook, Gettysburg, for appellant.

Roy A. Keefer, Assistant District Attorney, Gettysburg, for Commonwealth, appellee.

 

Before BECK, POPOVICH and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Adams County, following appellant's convictions on two counts of rape, one count of indecent assault and one count of simple assault. The lower court imposed a sentence of three to six years incarceration on one rape count and did not impose any sentence for the remaining convictions. Upon review, we reverse the judgment of sentence and remand for new trial.

Herein, appellant contends the evidence was insufficient to support his rape convictions because the Commonwealth failed to present evidence of forcible compulsion or threat of forcible compulsion. Appellant also contends that the lower court's jury instruction on lack of prompt complaint was erroneous and prejudiced his right to a fair trial.

■ "The test of the sufficiency of the evidence in a criminal case is whether, viewing the evidence admitted at trial in the light most favorable to the Commonwealth and drawing all reasonable inferences in the Commonwealth's favor, there is sufficient evidence to enable the trier of fact to find every element of the [crime] charged beyond a reasonable doubt." *Commonwealth v. Carter,* 329 Pa.Super. 490, 495–96, 478 A.2d 1286, 1288 (1984); *Commonwealth v. Peduzzi,* 338 Pa.Super. 551, 555, 488 A.2d 29, 31–32 (1985). Applying the foregoing standard, the lower court set forth the facts of this case as follows:

> ... In April, 1994, the victim, S.B., then age 19, and five months pregnant, was living alone in Room # 3 at the Homeless Shelter in Gettysburg, Pennsylvania. [Appellant], his girlfriend, Angela Clark, and their three children were residing in Room # 1, across the hallway from S.B.'s unit. Occasionally when Ms. Clark was not nearby, [appellant] would utter sexual remarks or make sexual overtures towards S.B. who thought he was joking at the time.

On April 5, 1994, S.B. retired for the evening at 11:00 P.M. Sometime between 12:30—1:00 A.M., S.B. was awakened by [appellant's] entry into her room. [Appellant] approached S.B.'s bed and asked if she was going to have sex with him. S.B. refused. [Appellant] hit S.B. in the face several time with a pillow which "kind of hurt". Then while holding her shoulders down, he pulled her shirt off and began kissing her breasts. S.B. protested but [appellant] told her to be quiet or he would tell Ms. Clark that S.B. invited him to her room and Ms. Clark would "beat her up". S.B., who appears shy and lacking in self-confidence, was afraid of Ms. Clark because she looked "rough". S.B. was also afraid that [appellant] would hit her in the stomach. [Appellant] then pulled off S.B.'s pants, penetrated her vagina with his penis, and continued telling her to be quiet when she protested. When [appellant] finished, he left the room.

At the time of the incident approximately 15 persons were staying at the Shelter, including S.B.'s friend, plus two staff persons. S.B. did not cry out for help. The next day S.B. went to work and spent time with another friend but told no one about the incident with [appellant] out of embarrassment. On the evening of April 6, 1994, Defendant again entered S.B.'s room, went through her wallet, removed her medical card, Social Security car and identification card and said he would keep them unless S.B. gave him some money from her next paycheck. After [appellant] left the room, S.B. reported both incidents to her friend, and a staff person, and the police.

[Appellant] acknowledged seeking S.B. earlier on April 5, and asking "Are you going to give me good loving tonight?" He admitted entering S.B.'s room and engaging in sexual intercourse but claimed it was consensual. When departing the room within 10 minutes after entry, he thought it important to say "Thank you."

[Appellant], age 20, stood 6'1", weigh[ed] 220 pounds and was in good physical shape. He displayed an attitude of

being able to take whatever pleased him whether that be sex or important personal documents.

Trial Court Opinion, pp. 1–2.

Rape is defined in 18 Pa.C.S.A. § 3121(1) and (2) as follows:

A person commits a felony of the first degree when he engages in sexual intercourse with another person not his spouse:

(1) by forcible compulsion;

(2) by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution[.]

Appellant, citing *Commonwealth v. Berkowitz*, 537 Pa. 143, 641 A.2d 1161 (1994), contends that the Commonwealth failed to prove forcible compulsion or threat of forcible compulsion, and appellant argues that this case is factually similar to and, therefore, controlled by *Berkowitz, supra.* In *Berkowitz*, 641 A.2d at 1163, our supreme court reiterated that:

The victim of a rape need not resist. 18 Pa.C.S.A. § 3107. "The force necessary to support a conviction of rape ... need only be such as to establish lack of consent and to induce the [victim] to submit without additional resistance.... The degree of force required to constitute rape is relative and depends on the facts and particular circumstances of the case." *Commonwealth v. Rhodes,* 510 Pa. 537, 554, 510 Pa. 537, 554, 510 A.2d 1217 (1986) (citations omitted.)

■ Our high court further noted that "where there is a lack of consent, but no showing of either physical force, a threat of physical force, or psychological coercion, the 'forcible compulsion' requirement under 18 Pa.C.S.A. § 3121 is not met." *Berkowitz*, 641 A.2d at 1164. In reaching its decision in *Berkowitz, supra,* the supreme court wrote: "In regard to the critical issue of forcible compulsion, the complainant's testimony is devoid of any statement which clearly or adequately describes the use of force or the threat of force against her." 641 A.2d at 1164. Presently, however, we find that there was sufficient evidence of the use of force and the threat of force.

 Appellant hit the victim in the face with a pillow which "kind of hurt" each time she refused to engage in intercourse with him. Appellant, a large man, held down the victim's shoulders before and during intercourse and removed the victim's clothing. In addition, appellant threatened to tell his girlfriend that they had engaged in consensual sex and his girlfriend would then "beat up" S.B., if she continued to refuse his advances. Further, the victim was pregnant and concerned for the well-being of her unborn child. In sum, we find that the facts *sub judice*, unlike those presented in *Berkowitz*, *supra*, were sufficient to establish the rape elements of physical force and threat of physical force necessary to sustain appellant's conviction. *Cf., Commonwealth v. Garaffa*, 440 Pa.Super. 484, 656 A.2d 133 (1995) (evidence was sufficient to sustain rape conviction despite victim's admissions that she willingly accompanied defendant into hotel room and failed to attempt to leave the room when given the opportunity, coupled with fact that defendant did not verbally threaten her, where defendant "pushed" victim onto bed, victim was "fighting" defendant's advances and she "pushed" him away); *Commonwealth v. Pride*, 252 Pa.Super. 34, 380 A.2d 1267 (1977) (evidence was sufficient to sustain rape conviction where defendant placed pillow over victim's face when she refused his advances and threatened to harm her and her baby if she continued to resist).[1]

Next, appellant complains that his right to a fair trial was unduly prejudiced when the lower court erroneously instructed the jury regarding the lack of prompt complaint by the victim. In *Commonwealth v. Snoke*, 525 Pa. 295, 300, 580 A.2d 295, 297 (1990), our supreme court wrote:

1. Moreover, we note that appellant has failed to allege that the evidence was insufficient to sustain his conviction for simple assault. By neglecting to contest the sufficiency of the evidence for his assault conviction, appellant has essentially admitted the forcible compulsion element of the rape conviction. *Commonwealth v. Irvin*, 260 Pa.Super. 122, 128–30, 393 A.2d 1042, 1046 (1978) (crime of rape, when perpetrated by forcible compulsion, includes crime of simple assault where assault is one element in the process and is used to overcome the volition of the victim).

Under common law, the promptness of a complaint or the "hue and cry" was considered an element for a jury to consider when weighing the veracity of a complainant. *See, e.g., Commonwealth v. Allen,* 135 Pa. 483, 19 A. 957 (1890); *Commonwealth v. Krick,* 164 Pa.Super. 516, 67 A.2d 746 (1949); *see also,* IV Wigmore on Evidence § 1135. The theory is based on the principle that a victim of a violent assault would be expected to complain of the assault at the first safe opportunity. *Commonwealth v. Lane,* 521 Pa. 390, 555 A.2d 1246 (1989); *Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371 (1979); *Commonwealth v. Stohr,* 361 Pa.Super. 293, 522 A.2d 589 (1987); *Commonwealth v. Freeman,* 295 Pa.Super. 467, 441 A.2d 1327 (1982). This principle has been codified in our crimes code at 18 Pa.C.S.A. § 3105. Section 3105 states:

> Prompt reporting to public authority is not required in a prosecution under this chapter: Provided, however, that nothing in this section shall be construed to prohibit a defendant from introducing evidence of the alleged victim's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence.

It has been said that "hue and cry follow rape like smoke follows fire." *Commonwealth v. Freeman,* 295 Pa.Super. at 476, 441 A.2d at 1332. The presumption follows that if a complaint is made promptly after the alleged offense, the victim has not had time to fabricate the story and the story is given more credibility. *See e.g., Commonwealth v. Krick, supra.* Conversely, if a complaint is delayed substantially without any reasonable explanation, an inference can be drawn regarding the credibility of that complaint and against whether the incident in fact occurred.

Presently, the record reveals that S.B. did not complain of the sexual assault after appellant left her room despite the fact that there were fifteen residents plus two staff members in the Homeless Shelter at the time. Further, appellant did not complain the next morning, nor while at work that afternoon, nor while at a friend's home that evening. It was not until after appellant took several important documents from

S.B., late in the evening following the assault, that she told a friend of hers who was also staying at the shelter.

■■■ Clearly, the trial judge is only required to instruct the jury upon law which is applicable to the presented facts. There must be some relationship between the law upon which an instruction is required and the evidence presented at trial. *Commonwealth v. Holland,* 518 Pa. 405, 411–13, 543 A.2d 1068, 1071 (1989), *quoting Commonwealth v. Whiting,* 409 Pa. 492, 498, 187 A.2d 563, 566 (1963), *citing Commonwealth v. Coleman,* 402 Pa. 238, 166 A.2d 525 (1961); *Commonwealth v. Meadows,* 381 Pa.Super. 354, 553 A.2d 1006, *appeal denied,* 524 Pa. 618, 571 A.2d 381 (1989); *Snoke,* 580 A.2d at 298. We agree with appellant (and the trial court) that an instruction on S.B.'s failure to make a prompt complaint was appropriate given the facts presented.[2]

■■■ Appellant claims the court's jury instruction was erroneous because it neglected specifically to inform the jury in accordance with Pa.S.S.Crim.J.I. § 4.13(a) (1979) which provides:

Before you may find the defendant guilty of the crime charged in this case, you must be convinced beyond a

2. We note that in *Stohr, supra,* this court found that the victim's complaint to her mother after a sexual assault by her father was a "prompt complaint" even though some twenty-four hours had passed since the assault. Thus, it could be argued that S.B.'s complaint which was made within twenty-four hours of the attack was a "prompt complaint", and, consequently, appellant was not even entitled to such a jury instruction.

However, we find *Stohr, supra,* to be distinguishable in that the victim therein was four years old at the time and was assaulted by her father. Where an assault is of such a nature that the minor victim may not have appreciated the offensive nature of the conduct, the lack of a prompt complaint would not necessarily justify an inference of fabrication. *Snoke,* 580 A.2d at 299 (a delay of one year in reporting would not necessarily require a prompt complaint instruction). In the present case, unlike *Stohr, supra,* the victim was an adult and had numerous opportunities to report the crime later that evening after appellant left her room and the following day, including when she was at work and at her friend's home. As this court noted over fifty-seven years ago: Where the victim is an adult, it is an important test of her credibility to have "complained on the first opportunity." *Commonwealth v. Berklowitz,* 133 Pa.Super. 190, 2 A.2d 516, 517 (1938).

reasonable doubt that the act charged did in fact occur *and that it occurred without [S.B.'s] consent.*

The evidence of [S.B.'s] delay in making a complaint does not necessarily make her testimony unreliable, but may remove it from the assurance of reliability accompanying the prompt complaint or outcry which the victim of a crime such as this would ordinarily be expected to make. Therefore, *the delay in making a complaint should be considered in evaluating her testimony and in deciding whether the act occurred with or without her consent.*

You must not consider [S.B.'s] delay in making a complaint as conclusive evidence that the act did not occur or that it did occur but with her consent. [S.B.'s] failure to complain promptly and the nature of any explanation for that failure are factors all bearing on the believability of her testimony and must be considered by you in light of all the evidence in the case. (Emphasis added.)

The trial court gave the following instruction regarding an alleged victim of sexual assault's failure to complain promptly:

I want to caution you that in considering especially count one and count two and also the one that I'm going to go over with you next, count three, there is no requirement for a victim of a sexual assault whether that be rape, and I'm going to describe indecent assault to you in a moment, to make a prompt complaint. There's no time limit. Lack of prompt complaint is something that you can consider but by itself it doesn't mean that the event didn't occur. There's argument her that there is some passage of time, opportunities to make a complaint and there wasn't. That's something you can consider and in doing that, consider again the setting, the circumstances, the individuals, the reasons that might have been given for that and determine whether that means anything to you or not.

Trial Transcript, pp. 103–104.

■ While a trial judge has broad discretion in phrasing points for charge and is not bound to give instructions in the form requested by the defendant, *Commonwealth v. Faulkner,*

528 Pa. 57, 595 A.2d 28 (1991), *cert. denied,* 503 U.S. 989, 112 S.Ct. 1680, 118 L.Ed.2d 397; *Commonwealth v. La,* 433 Pa.Super. 432, 640 A.2d 1336 (1994), the instruction *must* adequately, accurately and clearly present the law to the jury and *must* be sufficient to guide the jury in its deliberations. *Commonwealth v. Alvin,* 357 Pa.Super. 509, 516 A.2d 376 (1986), *appeal denied* 515 Pa. 603, 529 A.2d 1078; *Commonwealth v. Larkins,* 340 Pa.Super. 56, 489 A.2d 837 (1985).

Although we acknowledge the lower court was not required to instruct the jury on the issue of the lack of a prompt complaint *verbatim* from the standard jury instruction, we find that the instruction given by the court did not adequately and clearly present the issue to the jury. Nowhere in its instruction did the lower court inform the jury that S.B.'s delay in making a complaint should be considered in deciding *whether the act occurred with or without her consent.* In fact, the instruction could have been reasonably interpreted by the jury as bolstering the victim's credibility since it provided: "Lack of prompt complaint is something that you can consider but by itself *it doesn't mean that the event didn't occur.*" To the contrary, the law is that lack of a prompt complaint should cause the jury to look more critically upon the credibility of the victim. *Snoke,* 580 A.2d at 297; *Berklowitz,* 2 A.2d at 517, 518.

■ The question of whether S.B. consented to engaging in intercourse with appellant was the ultimate issue in the case, and, thus, we are convinced that it was essential to the fair administration of justice for the jury to have been informed that if a complaint is delayed substantially without any reasonable explanation, a negative inference can be drawn regarding the credibility of the victim and against whether she consented to the sexual contact. As our supreme court has previously stated, "[t]he lack of a prompt complaint by a victim of crime, although not dispositive of the merits of the case, *may justifiably produce a doubt as to whether the offense indeed occurred,* or whether it was a recent fabrication by the complaining witness." *Snoke,* 580 A.2d at 298, *quoting Lane, supra.*

Presently, appellant did not complain of the incident until nearly twenty-four hours after the incident and then did so only after appellant had taken several important personal documents from her and had threatened not to return them unless she gave him money from her paycheck. Thus, had the jury been properly instructed, it might have found the victim's allegation of lack of consent to have been a "recent fabrication" designed to punish appellant for his actions the *following* day. Such a conclusion is not inconceivable given the minimal (but, nevertheless, sufficient) evidence of physical force or threat of force which S.B. alleged and the ease with which S.B. could have summoned others to her rescue and received assistance in the Homeless Shelter.[3] Accordingly, we conclude the erroneous instruction was not harmless since it failed to focus the jury's attention upon the issue of consent and the impact of S.B.'s failure to complain promptly. *Commonwealth v. Dietterick*, 429 Pa.Super. 180, 188–90, 631 A.2d 1347, 1352 (1993) (where a jury charge is erroneous, we will grant a new trial where the error was not harmless); *Commonwealth v. Ehrsam*, 355 Pa.Super. 40, 59–61, 512 A.2d 1199, 1209 (1986).

In sum, we find that the evidence, when viewed in a light most favorable to the Commonwealth, was sufficient to sustain appellant's rape convictions. Nevertheless, we also hold that the lower court erred when it failed to instruct the jury properly in regards to S.B.'s failure to make a prompt complaint, and, consequently, we remand for a new trial since we are convinced the error was not harmless. *Cf., Berklowitz, supra.*

Judgment of sentence reversed. Case remanded for new trial. Jurisdiction relinquished.

BECK, J., files a concurring and dissenting opinion.

---

3. S.B. testified that the doors at the shelter did not have locks and that the rooms therein were by no means soundproof, given she was able to hear events in other rooms when she was in hers.

BECK, Judge, concurring and dissenting.

I concur in the majority's conclusion that the evidence presented by the Commonwealth was sufficient to establish force. However, I respectfully dissent from the majority's conclusion that the trial court's prompt complaint instruction was flawed. I would find that the instruction was sufficient.

A trial court is not bound to use specific language when charging a jury. It is the effect of the charge in its entirety that is controlling; all that is required is that the relevant legal principles be fully and adequately presented. *Commonwealth v. La*, 433 Pa.Super. 432, 640 A.2d 1336, 1344 (1994). With respect to the issue of delay in making a complaint, the relevant law is that "the lack of a prompt complaint by a victim of a crime, although not dispositive of the merits of the case, may justifiably produce a doubt as to whether the offense indeed occurred...." *Commonwealth v. Snoke*, 525 Pa. 295, 580 A.2d 295, 298 (1990).

In this case, the trial court instructed the jurors that they could consider the lack of a prompt complaint in their deliberations. Since the sole issue was whether the sexual contact was consensual, the charge essentially instructed the jurors to consider the failure to make a prompt complaint when deciding whether the victim was telling the truth.

Upon review of the court's instruction, I would hold that the relevant law was sufficiently communicated to the jury and, therefore, a new trial is unwarranted.